UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE VASQUEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION,<br><br>    Defendant. | Case No. 14-cv-04898-JCS<br><br>**ORDER RE PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT, MOTION FOR REMAND FOR LACK OF DIVERSITY JURISDICTION AND DEFENDANT'S MOTION TO TRANSFER VENUE**<br><br>Re: Dkt. Nos. 6, 10, 11 |

## I.    INTRODUCTION

Plaintiff Jose Vasquez initiated this action in the Superior Court for the State of California, San Francisco County, asserting claims arising out of his employment with Wells Fargo Bank, N.A. ("Wells Fargo"). Defendant removed the action to this Court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332. Plaintiff now brings a Motion for Leave to File Fist Amended Complaint ("Motion for Leave to Amend") and a Motion for Remand for Lack of Diversity Jurisdiction ("Remand Motion"). Defendant, in turn, brings a Motion to Transfer Venue ("Transfer Motion"). The Court determined that the motions were suitable for determination without hearing and vacated the hearing set for Thursday, January 8, 2015 at 9:30 a.m. For the reasons stated below, the Court DENIES Plaintiff's Motion for Leave to Amend and Remand Motion and GRANTS Defendant's Transfer Motion.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Complaint

In his complaint, Vasquez seeks to recover unpaid commissions from his former employer, Wells Fargo, which were allegedly withheld from Vasquez when he was involuntarily terminated, purportedly for "misconduct." Complaint, ¶ 5-8. Plaintiff alleges that at the time of his termination he was owed over $67,000 in commissions. *Id*. ¶ 5. In bringing an individual action, Vasquez opted out of a putative class action pending in San Francisco Superior Court "brought through Cesar Ascarrunz, on behalf of all California Home Mortgage Consultants who were not paid commission wages by virtue of having their employment involuntarily terminated, purportedly for alleged 'misconduct'" by Wells Fargo (hereinafter, "the *Ascarrunz* action"). *Id*. ¶ 1. In the Complaint, Vasquez asserts claims under the California Labor Code, California Business and Professions Code and California common law. He does not assert any claims under federal law.

### B. *Ascarrunz* Action

The history of the *Ascarrunz* action is set forth in an order of the San Francisco Superior Court filed August 25, 2014 ("the August 25 Order"), of which the Court takes judicial notice. *See* Remand Motion at 7 & Ex. 5 thereto (Order on Parties' Joint Motion for the Legal Determination of a Stipulated Issue, Case No. CGC-13-534620, consolidated with Case No. CGC-13-535636).[2] According to the state court, the *Ascarrunz* action "was initiated by Wells Fargo's appeal of an order by the Labor Commissioner awarding Ascarrunz $18,400.73 for commission wages earned and unpaid, plus $23,229.45 in statutory interest and penalties." Remand Motion, Ex. 5 at 1. Ascuarrunz responded by filing a putative class action seeking damages, injunctive relief and restitution, and the two actions were consolidated. *Id*. In the August 25 Order, the

---

[2] The Court takes judicial notice of the documents filed in the *Ascarrunz* action pursuant to Rule 201 of the Federal Rules of Evidence, which allows a court to take judicial notice of an adjudicative fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Judicial notice of the documents filed in the *Ascarrunz* action is proper under Federal Rule of Evidence 201(b) because the authenticity of these documents is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

court found, based upon facts to which the parties stipulated, that the provisions of the compensation plan upon which Wells Fargo relied in denying Ascarrunz commissions were unconscionable and unenforceable, and that Wells Fargo owed Ascarrunz his unpaid commissions. *Id*. at 2.

Thomas Kaufman represents Wells Fargo in this action and also serves as lead counsel for Wells Fargo Bank, N.A. in the *Ascarrunz* action. Declaration of Thomas R. Kaufman, Docket No. 16-1 ("Kaufman Decl. iso Opposition to Remand Motion"), ¶ 1. He states in his declaration that Plaintiff's counsel, Timothy Rumberger, also represents the plaintiff in the *Ascarrunz* action. *Id*., ¶ 2. Kaufman states that in the *Ascarrunz* action, the parties agreed to certain stipulated facts "in hopes of receiving a legal determination on some legal issues," but that no class has ever been certified and no class action has ever been filed. *Id*. ¶ 4. Consequently, Kaufman states, the August 25 Order is binding only as to Ascarrunz. *Id*. Kaufman also states that the defendant in the *Ascarrunz* action did not remove the action to federal court on the basis of diversity because at the time that action was filed, the prevailing view in the district court was that Wells Fargo Bank, N.A. was a citizen of California. *Id*. According to Kaufman, that has changed since the Ninth Circuit issued its ruling in *Rouse v. Wachovia Mortgage, FSB*, 747 F.3d 407 (9th Cir. 2014), finding that Wells Fargo Bank, N.A. is not a California citizen. *Id.*

Kaufman states that when he learned that the instant action had been filed by Vasquez, on October 15, 2014, he sent an email to Rumberger asking him why Vasquez was filing a separate action given that his claims appeared to fall within the ambit of the *Ascarrunz* putative class action. *Id*. ¶ 5. According to Kaufman, he received an email from Rumberger on October 16, 2014 stating that Vasquez, like Ascurrunz, was not paid commissions on loans that were funded post-termination but that unlike Ascarrunz, Vasquez had been "paid all commissions on those loans that funded as of the date of termination." *Id*. ¶ 6.

According to Kaufman, Ascarrunz worked in "various offices within the Bay Area" before he was terminated by Wells Fargo. *Id*. ¶ 3. In contrast, he states, Vasquez worked in Santa Barbara California. *Id*. ¶ 7.

**C.     Wells Fargo Entities**

Defendant presents evidence that in 2012, all persons employed as Wells Fargo Home Mortgage Consultants (the position held by Vasquez) in the State of California were employed by Wells Fargo Bank, N.A.  Declaration of Nicole Hess, Docket No. 14-1 ("Hess Decl. iso Opposition to Remand Motion"), ¶ 2.  According to Hess, an Employee Relations Sr. Consultant for Wells Fargo, none of the Wells Fargo Home Mortgage Consultants in the State of California was employed by Wells Fargo & Company in 2012.  *Id*.

According to Patricia Ruedenberg, Assistant Secretary of Wells Fargo Bank, N.A., Wells Fargo Bank, N.A. "is a national banking association with its main office located in Sioux Falls, South Dakata."  Declaration of Patricia A. Ruedenberg, Docket No. 14-1 ("Ruedenberg Decl. iso Opposition to Remand Motion"), ¶ 2.  Ruedenberg further states that "Wells Fargo & Company is a bank holding company which, at this time, indirectly holds 100% of Wells Fargo Bank, N.A.'s common stock."  *Id*., ¶ 3.  Ruedenberg states that "[d]uring 2012, Wells Fargo Bank, N.A. was a direct and indirect, wholly-owned subsidiary of Wells Fargo & Company.  During 2012, Wells Fargo Bank, N.A. had multiple parent corporations including WFC Holdings Corporation, Charter Holdings, Inc., IBID, Inc., and Wells Fargo & Company."  *Id*. ¶ 4.  A chart attached as Exhibit A to the Ruedenberg Declaration illustrates the ownership of Wells Fargo Bank, N.A. as of October 2012.

Plaintiff presents evidence that Wells Fargo & Company is based in San Francisco, California, namely, the official public records of the California Secretary of State listing the location of Wells Fargo & Company as "420 Montgomery Street, San Francisco, CA." Declaration of Timothy P. Rumberger in Support of Plaintiff's Motion for Leave to File First Amended Complaint, Docket No. 10-1 ("Rumberger Decl. iso Motion for Leave to Amend"), ¶ 8 & Ex. 3.  Plaintiff also cites the Form 10-k filed by Wells Fargo & Company for the fiscal year ending December 31, 2013, in which it states that Wells Fargo Bank, N.A. is its "principal subsidiary" and makes up 90% of its assets.  *Id*. ¶ 9 & Ex. 4. According to Plaintiff, Wells Fargo & Company "does not distinguish between its employees and those of its subsidiaries" in the Form 10-k.  *Id*., Ex. 4A  Further, Plaintiff contends, the 2013 Annual Report for Wells Fargo &

4

1    Company "set[s] forth solely a 'Consolidated Statement of Income,' 'Consolidated Balance

2    Sheet,' 'Consolidated Statement of Changes in Equity,' and a 'Consolidated Statement of Cash

3    Flows'– which does not distinguish between its financial data and that of its primary subsidiary,

4    Wells Fargo Bank, N.A., evidencing on its face that Wells Fargo & Company benefits directly

5    from the loans Plaintiff originated during his employment and from the commission-wages

6    Plaintiff has been denied despite having generated these loans on behalf of his employer." *Id*., ¶ 9.

      **D.**    **Motion for Leave to Amend**

In his Motion for Leave to Amend, Plaintiff seeks to amend his complaint in this action to add Wells Fargo & Company as a defendant. Motion for Leave to Amend at 3; *see also* Rumberger Decl. iso Motion for Leave to Amend, Ex. 1 (Proposed First Amended Complaint). Plaintiff cites the standard set forth in Rule 15(a)(2), which provides that "[t]he court should freely give leave [to amend] when justice so requires." *Id*. at 4. Here, Plaintiff asserts, justice requires that he be permitted to amend because the action was filed recently and thus, there has been no undue delay. *Id*. Further, Plaintiff asserts, while the requested amendment will admittedly destroy diversity jurisdiction, "Wells Fargo Bank, N.A. can hardly be heard to claim 'prejudice' from the amendment when Wells Fargo & Company is the ultimate responsible party according to its own officially filed public record Form 10-k filed for the fiscal year ending December 31, 2013." *Id*. Plaintiff also notes that he asserts claims under the California Labor Code, which "defines 'employer' extremely broadly to include all parties responsible or who benefit from its violations – extending even to 'other person[s] [acting] on behalf of an employer' (Cal. Labor Code § 558(a)) – thus distinguishing this action from cases arising from alleged breach of contract or common law where a parent company may be shielded from the misconduct of a subsidiary." *Id*. at 4-5 (citing *Campidoglio LLC v. Wells Fargo & Co*., Case No. C-12-0949 TSZ, 2012 WL 5844693 (W.D.Wash., Nov. 19, 2012)).

In its Opposition brief, Wells Fargo counters that the applicable standard is set forth in 28 U.S.C. § 1447(e), which gives the Court discretion as to whether to allow a plaintiff to amend to add a non-diverse defendant in a case that has been removed to federal court on the basis of diversity jurisdiction. Opposition to Motion for Leave to Amend at 1, 6. Wells Fargo contends

that the Court should not exercise its discretion to permit amendment because Plaintiff has no viable claim against Wells Fargo & Company and is only seeking to add that defendant in order to destroy diversity and thereby "escape" federal court. *Id*. at 4, 6 (citing *Omega v. Wells Fargo*, 2012 WL 685440 (N.D. Cal. March 2, 2012)). Wells Fargo argues that California law permits claims for unpaid wages to be asserted against only one employer and Plaintiff has set forth no facts suggesting Wells Fargo & Company is his employer. *Id*. at 7 (citing *Futrell v. Payday California, Inc.*, 190 Cal. App. 4th 1419, 1423 (2010); *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010) (defining an "employer" as one who: 1) exercises control over the wages, hours and working conditions of an employee; 2) suffers or permits an employee to work; or 3) engages an employee, thereby creating a common law employment relationship)). To the extent Plaintiff relies on statements in Wells Fargo & Company's 10-k statement, Wells Fargo asserts, that reliance is misplaced because "mere status as a parent corporation of an employer does not make an entity a joint 'employer' for purposes of California wage and hour law." *Id*. at 7 (citing *Laird v. Capital Cities/ABC*, 68 Cal. App. 4th 727 (1998) ("common ownership or control alone is never enough to establish parent liability")). Rather, Wells Fargo argues, to hold the parent liable, the employee must "establish that the parent 'exercised day-to-day control over [the subsidiary's] employment decisions.'" *Id*. at 8 (citing *Laird*, 68 Cal. App. 4th at 738-739).

Wells Fargo also points out that Wells Fargo & Company has not been named as a defendant in the *Ascarrunz* case. *Id*. at 4. Its counsel, Thomas Kaufman, also states that he has been "lead counsel in more than a half dozen class actions filed against WF Bank" and that he does "not recall anywhere [Wells Fargo & Company] was even named as an additional party" and that he "know[s] that counsel in those cases never once argued that [Wells Fargo & Company] was an indispensible party to the litigation." Kaufman Decl. iso Opposition to Remand Motion, ¶ 8. According to Kaufman, Plaintiff's counsel in this case and in *Ascarrunz,* Mr. Rumberger, "never argued that [Wells Fargo & Company] was an indispensible party in *Ascarrunz . . . .*" *Id*.

In his Reply brief, Plaintiff rejects Wells Fargo's assertion that he should not be permitted to amend because he can state no claim against Wells Fargo & Company. Reply at 2. Plaintiff argues that his request to amend the Complaint is not based on the theory that Wells Fargo &

6

1  Company and Wells Fargo Bank, N.A. are essentially one and the same entity. *Id*. Rather,
2  Plaintiff asserts, he seeks to hold Wells Fargo & Company liable as a co-conspirator involved in a
3  joint enterprise with Wells Fargo Bank, N.A. According to Plaintiff, courts permit joinder of a
4  non-diverse defendant under Section 1447(c) when the proposed defendants are "closely related,"
5  as is the case here. *Id*. at 3 (citing *Graunstadt v. USS-Postco Indus.,* 2010 WL 3910145, at *2
6  (N.D. Cal. Oct. 5, 2010)). Further, Plaintiff asserts, to prove co-conspirator liability, Plaintiff is
7  not required to show that Wells Fargo & Company was involved in the day-to-day operations of
8  Wells Fargo Bank, N.A.; rather, Plaintiff need only establish a common plan or design. *Id*. (citing
9  *Kasperzyk v. Shetler Security Services, Inc.*, 2014 WL 1760040 (N.D. Cal. May 2, 2014)).
10 According to Plaintiff, to the extent there is evidence that Wells Fargo & Company benefits from
11 the denial of Plaintiff's commission payments, this requirement is met. *Id*. at 4.

### E. Remand Motion

In tandem with his Motion for Leave to Amend, Plaintiff asks the Court to remand the action to San Francisco Superior Court pursuant to 28 U.S.C. § 1447(c) on the basis that Wells Fargo & Company is listed as a defendant on the proposed amended complaint and that entity is a citizen of California, thus destroying diversity jurisdiction. Remand Motion at 5. Plaintiff cites the fact that Wells Fargo & Company lists a San Francisco, California address in the public records of the California Secretary of State in support of its contention that Wells Fargo & Company is a California citizen. *Id*. Plaintiff further asserts the Court should remand the action to the San Francisco Superior Court because the *Ascarrunz* action is pending there and therefore, remanding this action will be in the interest of judicial efficiency and will avoid the possibility of inconsistent outcomes. *Id*. at 7.

In its Opposition brief, Wells Fargo does not dispute that Wells Fargo & Company is a citizen of California and therefore, that diversity will be destroyed if the Court permits Plaintiff to add that entity as a defendant in this action. Instead, it opposes the Remand Motion for the same reasons articulated in its opposition to Plaintiff's Motion for Leave to Amend, namely, that Plaintiff should not be permitted to add Wells Fargo & Company to this action because it is a sham defendant against whom Plaintiff has articulated no viable claim.

### F. Motion to Transfer

In its Motion to Transfer, Wells Fargo asks the Court to transfer this action to the Central District of California pursuant to 28 U.S.C. § 1404(a), which allows the court to transfer an action to another district where the action "might have been brought" originally "[f]or the convenience of parties and witnesses, in the interest of justice." Motion to Transfer at 1 (quoting 28 U.S.C. § 1404(a)). According to Wells Fargo, Vasquez has no meaningful contacts with the Northern District of California and the key witnesses and documents in the case also are not located in this district. *Id*. at 1 citing Declaration of Nichole Hess ("Hess Decl. iso Motion to Transfer"); Declaration of Thomas R. Kaufman ("Kaufman Decl. iso Motion to Transfer"); Declaration of Todd Hauer ("Hauer Decl. iso Motion to Transfer")).

As noted above, Hess is an Employee Relations Sr. Consultant for Wells Fargo. Hess Decl. iso Motion to Transfer, ¶ 1. Hess states that she has reviewed the payroll records and personnel file of Jose Vasquez, that he worked for Wells Fargo from February 29, 2008 to October 17, 2012 and that during that entire time he worked for Wells Fargo in Santa Barbara, California, where he also lived. *Id*. at 3. According to Hess, Vasquez's branch manager at the time he was terminated by Wells Fargo was Jovan Obando, whose last address on record was in Santa Barbara. *Id*., ¶ 5. According to Hess, Obando is no longer employed by Wells Fargo but she is informed and believes that Obando continues to reside in the Santa Barbara area. *Id*.

According to Kaufman (Wells Fargo's counsel in this action), he is representing Wells Fargo in a wrongful termination action that has required him to contact Vasquez's former manager, Jovan Obando, as a witness in that action. Kaufman Decl. iso Motion to Transfer, ¶ ¶ 2. Consequently, Kaufman is aware that Obando continues to reside in Santa Barbara, California. *Id.* Kaufman has also accessed LinkedIn, where Vasquez has a public profile reflecting that he currently works in Santa Barbara for Caliber Home Loans. *Id.*, ¶ 3. Kaufman states that he has acted as lead counsel in several lawsuits for Wells Fargo involving Home Mortgage Consultants, arising not only in California but also in New York, Pennsylvania, Connecticut and New Jersey. *Id*. ¶ 4. According to Kaufman, he has become aware through these representations that "Wells Fargo's nationwide Mortgage Operations are primarily in the Midwest (mostly Des Moines) and

8

*not* in San Francisco." *Id*. (emphasis in original). He further states that he does not recall any witnesses in these cases being from Northern California "except to the extent the Plaintiff worked in Northern California and the witness was a local manager (e.g., a branch manager for a Northern California branch)." *Id*. Kaufman states that "the only connection between this action and Northern California that [he] can see is that Plaintiff's counsel, Tim Rumberger, has his office in Alameda County." *Id*. ¶ 5.

Wells Fargo also submits a declaration by Todd Hauer, a Compensation Consultant for Wells Fargo who was involved in the preparation of the Home Mortgage Consultant Compensation Plan that Vasquez alleges was violated. Hauer Decl. iso Motion to Transfer. Hauer's office is in Minneapolis, Minnesota. *Id*. ¶ 1. He states that he has repeatedly served as "person most knowledgeable" for Wells Fargo as to the Compensation Plan and would likely be the witness for Wells Fargo in this action with respect to the Compensation Plan. *Id*. ¶ 2. According to Hauer, "[t]o the extent any employees from Bonus Commission Accounting department would be called to address Wells Fargo's methods for calculation [of] [Home Mortgage Consultant] compensation, they would be primarily in West Des Moines, Iowa, and not in San Francisco at all." *Id*. ¶ 3.

Wells Fargo argues that the Court should transfer the action because it could have been brought in the Central District of California on the basis of diversity and convenience and the interest of justice strongly favor transfer. Motion to Transfer at 3-4. First, Wells Fargo argues that although the plaintiff's choice of forum ordinarily is afforded deference, Vasquez's choice of forum is afforded little weight because he does not reside in the Northern District of California and he has virtually no connection with the forum. *Id*. at 5 (citing *Pacific Car & Foundry Co*. *v*. *Spence*, 403 F.2d 49-54 (9th Cir. 1968); *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001)). Second, Wells Fargo argues that the convenience of the witnesses favors transfer because Plaintiff's manager resides in the Central District, as do the employees who took over Plaintiff's loans after he was terminated. *Id*. 5-6. Some witnesses also may reside in the Midwest, Wells Fargo asserts, but none resides in Northern California. *Id*. at 6. According to Wells Fargo, courts have "recognized the importance of avoiding burdens on the defendant's employees and

business operations as a compelling ground for transfer." *Id*. at 6 (citing *United States v. General Motors Corp.*, 183 F. Supp. 858 (S.D.N.Y. 1960)). Further, the Court should take into consideration the expense of transporting witnesses from Santa Barbara to San Francisco, Wells Fargo asserts. *Id*. at 7 (citing *Martin-Trigona v. Meister*, 668 F. Supp. 1, 3 (D.D.C. 1987); *Hodgdon v. Needham-Skyles Oil Co*., 556 F. Supp. 75, 79 (D.D.C. 1982)). Finally, Wells Fargo argues that transfer is appropriate because sources of proof are located entirely outside the Northern District of California. *Id*. at 7-8 (citing *In re Horseshoe Entertainment*, 305 F.3d 354, 358 (5th Cir. 2002); *Kim v. Kim*, 324 F. Supp. 2d 628 (E.D. Pa. 2004)).

In his Opposition brief, Plaintiff argues that the court should decide the Remand Motion before addressing the Motion to Transfer and that the venue question will be moot if the Court decides to remand this action to state court. Opposition at 2-3. Even if the Court denies the Remand Motion, Plaintiff asserts, venue is automatically proper in this Court under the removal statute, 28 U.S.C. § 1390(c), which provides that an action may be removed to the district court where the state court action is pending. Because this action was removed from San Francisco Superior Court, Plaintiff contends, Wells Fargo cannot challenge venue in this Court. *Id*. at 3 (citing 28 U.S.C. § 1390(c); *Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1231 (D. Kan. 2000)). Plaintiff further asserts that Wells Fargo & Company resides in San Francisco, California, as discussed above, and therefore, venue is proper in the Northern District of California. *Id*. at 4.

Plaintiff also argues that his choice of forum is entitled to deference and that a "clear balance of inconvenience" must be shown to warrant a transfer. *Id*. at 5 (citing *In re Volkswagen of America, Inc.*, 506 F.3d 376, 385 (5th Cir. 2007); *Heller Financial, Inc. v. Midwhey Powder Co.*, *Inc*, 883 F.2d 1286, 1293 (7th Cir. 1989)). There is no such clear balance here, Plaintiff asserts, because it is in the interest of judicial economy that this action be decided by the same judge who is adjudicating the pending class action in San Francisco Superior Court – the *Ascarrunz* action. *Id*. at 4-5.

In addition, Plaintiff asserts, Wells Fargo's reliance on the fact that Plaintiff's former manager and other Wells Fargo employees with whom Plaintiff worked are located in the Central

District is misplaced because this is not a wrongful termination action. *Id*. at 6. Instead, "the sole dispositive legal issue" in this case is whether Wells Fargo's compensation plan is unconscionable to the extent it denies commission wages to employees it determines are terminated for "misconduct." *Id*. The determination of that issue, Vasquez contends, does not depend on the testimony of any witnesses in Santa Barbara such as Plaintiff's branch manager or other Wells Fargo employees with whom Plaintiff worked. *Id*. Nor is there any dispute that Wells Fargo failed to pay commissions on the loans listed in his First Amended Complaint that would require the testimony of witnesses based in Santa Barbara. Similarly, the amounts of the commissions sought by Plaintiff will not involve the testimony of Santa Barbara witnesses because it is calculated under the terms of the Compensation Plan, which also are undisputed. *Id*.

In its Reply brief, Wells Fargo argues that Vasquez has addressed the wrong question to the extent he argues that it would be more convenient for this action to litigated in San Francisco Superior Court, where the *Ascarrunz* action is currently pending, than in the Central District of California. Reply at 1. That is not the question, Wells Fargo argues, because Plaintiff has opted out of the *Ascarrunz* action, instead asserting his own individual claims. *Id*. Further, Wells Fargo asserts, Plaintiff's choice of forum is not entitled to deference because he does not reside here and none of the documents or witnesses are found in this district. *Id*. Wells Fargo also rejects Plaintiff's contention that there is only a single legal issue to be resolved and that no witnesses from the Central District will be required to testify. *Id*. at 1-2. Wells Fargo points out that the state court's order in the *Ascarrunz* action was based on stipulated facts whereas in this case, the parties will likely litigate questions such as the power Vasquez had in negotiating the terms of his compensation, why he was terminated, and whether there was an equitable basis not to pay him commissions on the loans for which he seeks payment. *Id*. at 2. According to Wells Fargo, this means the witnesses may include not only Vasquez but also "the Wells Fargo managers with whom he negotiated his employment contract, the Wells Fargo personnel who decided to terminate his employment in 2012, and Rule 30(b)(6) witnesses concerning his compensation plan." *Id*.

## III. ANALYSIS

### A. Motion for Leave to Amend, Motion for Remand

#### 1. Legal Standards

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand to state court." 28 U.S.C. § 1447(e). In deciding whether to exercise its discretion under this section, a court should consider: "(1) whether the party plaintiff seeks to join is required for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a); (2) whether the statute of limitations would bar an action against defendant in state court; (3) whether the joinder is untimely, or there has been an unexplained delay in its request; (4) whether joinder is intended solely to destroy diversity jurisdiction, (5) whether the claim against the defendant appears valid, and (6) whether denial of joinder will prejudice the plaintiff." *Graunstadt v. USS-Posco Industries*, Case No. C-10-3225-SI, 2010 WL 3910145, at *2 (N.D.Cal., Oct. 5, 2010) (citations omitted). Any of the factors may be decisive, and none is absolutely necessary for joinder. *Id*. If the court permits joinder of a non-diverse defendant, the case should be remanded to state court. 28 U.S.C. § 1447(c)(providing in part that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").

Rule 19(a) governs the joinder of "required" parties, and requires joinder when 1) complete relief is not possible without the absent party's presence; or 2) the absent party claims a legally protected interest in the action such that (i) disposition of the action may "impair or impede" the person's ability to protect that interest or (ii) "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed.R.Civ.P. 19(a). Joinder under Section 1447(e) is more permissive than joinder under Rule 19. *Graunstadt*, 2010 WL 3910145, at *2. Courts permit joinder of non-diverse defendants under Section 1447(e) where the proposed defendants are closely related to the cause of action or where their absence would prevent the grant of complete relief between the parties. *Id*.

### 2. Discussion

The Court finds that the first three factors listed above weigh in favor of permitting Plaintiff to join Wells Fargo & Company as a defendant in this action. The second three factors weigh against joinder, however, and the Court finds that in this case, the latter outweigh the former.

#### a. Rule 19(a)

Plaintiff asserts the same claims against Wells Fargo & Company as he does against Wells Fargo Bank, N.A., seeking to extend liability to Wells Fargo & Company under a theory of conspiracy. Were Plaintiff's claims viable as to Wells Fargo & Company, the claims asserted against the two entities would clearly be related. Under the permissive standards of joinder under Section 1447(e), this factor weighs in favor of permitting joinder. Statute of Limitations

#### b. Statute of Limitations

It is undisputed that Plaintiff would not be barred under any statute of limitations from suing Wells Fargo & Company in state court for the alleged conduct. "Generally, if a statute of limitations does not bar a plaintiff from filing suit in state court, a federal court may be less inclined to permit joinder of a non-diverse defendant because he could still theoretically seek relief from state court." *Graunstadt*, 2010 WL 3910145, at *3 (citing *Clinco v. Roberts*, 41 F.Supp.2d 1080, 1083 (C.D. Cal. 1999)). Therefore, this factor weighs against permitting joinder.

#### c. Timeliness

Plaintiff has not unduly delayed in seeking to add Wells Fargo & Company as a defendant in this action. Therefore, this factor weighs in favor of permitting joinder.

#### d. Whether Joinder is Intended to Destroy Diversity

The Court has serious concerns about Plaintiff's motivations in seeking joinder of Wells Fargo & Company. Plaintiff's counsel did not name Wells Fargo & Company as a defendant until after Wells Fargo removed this action to federal court, even though he is lead counsel in *Ascarrunz* and therefore could have been expected to be familiar with the various Wells Fargo entities that might be liable when he initiated this action. It is also telling that Wells Fargo & Company has not been named as a defendant in the *Ascarrunz* action even though he asserts that

Wells Fargo & Company is ultimately responsible for the conduct at issue in this case – which is essentially the same conduct that is at issue in *Ascarrunz*. Indeed, according to Mr. Kaufman, in many similar cases against Wells Fargo where he has served as defense counsel, Wells Fargo & Company has not been named as a defendant. Kaufman Decl. iso Remand Motion, ¶ 8. Finally, as discussed below, Plaintiff has not articulated any viable claim against Wells Fargo & Company, further supporting the conclusion that Plaintiff's counsel is seeking to join Wells Fargo & Company simply to destroy diversity. This factor weighs against permitting joinder of Wells Fargo & Company.

     e. Whether Claims Asserted Against Non-Diverse Defendant Appear Valid

Under California law, claims for unpaid wages may be asserted only against the employer. *Futrell v. Payday California, Inc*., 190 Cal.App.4th 1419, 1423 (2010). An employer is defined as one who: 1) exercises control over the wages, hours and working conditions of an employee; 2) suffers or permits an employee to work; or 3) engages an employee, thereby creating a common law employment relationship. *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010). Although under some circumstances two corporations may be treated as a single employer, there is a strong presumption against holding a parent corporation liable for the acts or omissions of the subsidiary on the theory that the two corporate entities constitute a single employer. *Laird v. Capital Cities/ABC*, 68 Cal. App. 4th 727, 737 (1998). This presumption is based on the principal that corporate entities have separate existences. *Id*. Consequently, the corporate form is disregarded only when "the ends of justice require this result." *Id*. (citing *Mesler v. Bragg Management Co*. 39 Cal.3d 290, 300 (1985) (alter ego liability); *Mid-Century Ins. Co. v. Gardner*, 9 Cal.App.4th 1205, 1212 (1992)(same)).

Wells Fargo Bank, N.A. has offered evidence that it is the employer of the Home Mortgage Consultants, and that Wells Fargo & Company is simply a holding company that owns shares of Wells Fargo Bank, N.A. Plaintiff does not dispute these facts; nor does he offer any evidence or allege any facts that suggest that Wells Fargo & Company should be liable for unpaid wages under an alter ego theory or as joint employer. Instead, he asserts for the first time in his Reply brief that he is suing Wells Fargo & Company under a conspiracy theory on the basis that

14

the two entities are engaged in a joint enterprise.

Plaintiff cites to *Kasperzyk v. Shetler Security Services, Inc*., 2014 WL 1760040, at * 5-7 (N.D. Cal. May 2, 2014), in which the court held on a motion to dismiss that the plaintiff, who asserted a claim for wrongful termination, had alleged sufficient facts to show that two corporations were joint tortfeasors and therefore could be held liable under a civil conspiracy theory. In that case, the court found that under California law, the key factor in determining whether a defendant may be held liable as a joint employer is whether the entity has the right to control and direct the activities of the person rendering service, or the manner and method in which the work. *Id*. at *6 (citations omitted). The court relied on specific factual allegations in that case to find that the two entities who were alleged to be joint employers (who were *not* a parent and a subsidiary) each exercised significant control over the plaintiff's work activities. *Id*. at 6-7.

Here, in contrast, Plaintiff has alleged in his proposed First Amended Complaint only that Wells Fargo & Company "boast[ed]" in its Form 10-K that Wells Fargo Bank, N.A. was its "principal subsidiary," and that in its 2013 Annual Report, it listed consolidated financial data. See Proposed First Amended Complaint, ¶ 5. Plaintiff has alleged *no* specific facts showing that Wells Fargo & Company exercised control over Plaintiff's work activities. Nor has he even included allegations in his proposed amended complaint that the two entities engaged in a conspiracy. Rather, he has merely alleged that Wells Fargo & Company owns a significant share of Wells Fargo Bank, N.A. Such allegations are not sufficient to hold Wells Fargo & Company liable as an employer under California law. Therefore, the Court concludes that this factor weighs against permitting joinder of Wells Fargo & Company.

### f. Prejudice

Because the Court finds that Plaintiff fails to state viable claims against Wells Fargo & Company, it also finds that Plaintiff will not be prejudiced if the Court does not permit joinder. Therefore, this factor weighs against permitting joinder.

### g. Conclusion

Weighing the factors discussed above, the Court finds that the most significant factors are

the fourth and fifth factors. In particular, the Court concludes that Plaintiff seeks to join Wells Fargo & Company primarily in order to destroy diversity and that Plaintiff's claims against that entity do not appear to be valid. In light of these findings, the Court concludes that Plaintiff should not be permitted to join Wells Fargo & Company as a defendant under Section 1447(e). For the same reasons, the Court denies Plaintiff's Remand Motion.

### B. Motion to Transfer Venue

#### 1. Legal Standards

Pursuant to 28 U.S.C. § 1404(a), a case may be transferred to any district where the action could have been brought "[f]or the convenience of parties and witnesses, in the interest of justice[.]" A party seeking transfer must make "a strong showing . . . to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co*., 805 F.2d 834, 843 (9th Cir. 1986). The district court has discretion to transfer cases based on the individualized facts of each case and considerations of convenience and fairness. *Jones v. GNC Franchising, In*c., 211 F.3d 495, 498 (9th Cir. 2000). In determining whether to transfer an action under § 1404(a), courts may consider the following factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id*. at 498-499.

The party that seeks a transfer of venue under § 1404(a) bears the burden of showing that the transfer is appropriate. *Fabus Corp. v. Asiana Exp. Corp.*, Case No. C-003172, 2001 WL 253185, at * 1 (N.D. Cal., March 5, 2001) (citing *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1316-17 (9th Cir.1985), rev'd in part on other grounds by *Holmes v. Securities Investor Protection Corp*., 503 U.S. 258 (1992)). The weight of that burden, however, depends in part on the plaintiff's venue choice. *Id*. As a general rule, the plaintiff's choice of venue is accorded substantial weight. *Id*. The degree to which a court defers to the plaintiff's choice of

1   forum is substantially reduced, however, where the plaintiff's chosen venue is not its residence or
2   lacks a significant connection to the activities alleged in the complaint. *Id*. (citing *Chrysler*
3   *Capital Corp. v. Woehling*, 663 F. Supp. 478, 482 (D.Del.1987); *Hernandez v. Graebel Van Lines*,
4   761 F.Supp. 983, 991 (E.D.N.Y.1991)).

### 2. Discussion

As a preliminary matter, the Court finds this action could have been brought in the Central District of California. In that district (like the Northern District of California), there is subject matter jurisdiction on the basis of diversity under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties named in the original complaint[3] and it is apparent from the face of the complaint that at least $75,000 is in controversy.[4] Further, because Vasquez worked for Wells Fargo and resided in the Central District, venue is proper under 28 U.S.C. § 1391(a) ("A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose"). Thus, the only question remaining is whether transfer is warranted for the convenience of the parties and witnesses and in the interest of justice. The Court concludes that it is.

First, under the facts of this case, the Plaintiff's choice of forum is entitled to little deference. Plaintiff has presented no evidence of any contacts with this forum other than the fact that his counsel practices law here and is currently representing the plaintiff in *Ascarrunz* in San Francisco Superior Court. "The convenience of counsel is not considered for purposes of deciding whether a venue is convenient for the purposes of § 1404(a)." *Smith v. Aetna Life Ins. Co.*, Case No. C-11-2559 SI, 2011 WL 3904131, at *2 (N.D. Cal., September 6, 2011) (citing *In re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir.2003) ("The factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of the transfer of venue.");

---

[3] It is undisputed that Plaintiff is a citizen of California. Further, the Ninth Circuit has held that Wells Fargo Bank, N.A. is a citizen only of South Dakota for the purposes of diversity jurisdiction. *See Rouse v. Wachovia Mortgage F.S.B.*, 747 F.3d 707, 715 (9th Cir. 2014).
[4] In the Complaint, Plaintiff alleges that he is entitled to over $67,000 in unpaid commissions. Complaint, ¶ 14. He also seeks interest on the unpaid commissions, penalties and attorneys' fees. Prayer.

United States District Court
Northern District of California

*Solomon v. Continental American*, 472 F.2d 1043, 1047 (3d Cir.1974) ("The convenience of counsel is not a factor to be considered.")). Further, while the San Francisco Superior Court is undoubtedly familiar with the issues raised in this case based on its adjudication of the *Ascarrunz* action, this Court has already determined that Wells Fargo is entitled to proceed in federal district court. Thus, Plaintiff's reliance on the efficiency of trying the two actions in the same forum is misplaced.

Second, while some of the documentary evidence and witnesses (such as Wells Fargo's person most knowledgeable as to the Home Mortgage Consultants Compensation Plan, Todd Hauer), are located in Minnesota and Iowa, the witnesses who will be able to testify as to the negotiation of the terms of Plaintiff's employment (which is relevant to procedural unconscionability), the work he did on the loans on which he seeks commissions (which is relevant to the amount of commission he may be able to recover) and the circumstances of his termination (which may be relevant to whether he is entitled to those commissions), including his manager at Wells Fargo at the time of his termination, are located in the Central District of California, where Plaintiff worked. Consequently, the Central District of California is likely to be more convenient than the Northern District of California for some witnesses. On the other hand, Plaintiff has identified *no* witnesses who reside in the Northern District and who would be inconvenienced by transfer of this action to the Central District of California. Further, the fact that the witnesses who are located in California are likely to reside in the Central District of California and not in the Northern District of California supports the conclusion that the costs of litigation will be less in the Central District of California because these witnesses will not be required to travel as far to testify. While none of the other factors strongly points in either direction, the Court finds that the locations of the Plaintiff and the witnesses in this case is sufficient to warrant transfer to the Central District of California under 28 U.S.C. § 1404(a) in light of Plaintiff's lack of contacts with the Northern District of California.

## IV. CONCLUSION

For the reasons stated above, the Motion for Leave to Amend and the Remand Motion are DENIED.  The Motion to Transfer is GRANTED.  The Clerk is directed to transfer this action to the Central District of California.

**IT IS SO ORDERED.**

Dated: January 5, 2015

_____
JOSEPH C. SPERO
United States Magistrate Judge